**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

CLAYTON LOUIS SHRIVER,

      Plaintiff,

v.

CITY OF WESTMINSTER, in its official capacity;
OFFICER MICHAEL OWEN, in his individual capacity; and
OFFICER TYLER FARSON, in his individual capacity.

      Defendants.

_____

**COMPLAINT AND JURY DEMAND**

_____

      Plaintiff, Clayton Louis Shriver, by and through his attorney, Tiffany J. Drahota of DRAHOTA DEFENSE LLC AND Roger F. SAGAL OF SAGAL LAW, LLC, respectfully bring this Complaint and Jury Demand. In support thereof, Mr. Shriver states the following:

**JURISDICTION AND VENUE**

      1.    Jurisdiction over these claims is conferred upon this Court pursuant to 28 U.S.C. § 1331 and § 1343(a)(3), and this case is brought pursuant to 42 U.S.C. § 1983.   Jurisdiction supporting Plaintiff's claims for attorney fees is conferred by and brought pursuant to 42 U.S.C. § 1988.

      2.    Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b).  All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State of Colorado at all relevant times stated herein.

**PARTIES**

3.      At all times relevant to this Complaint, Clayton Shriver was a citizen of the United States of America and resident of the State of Colorado.

4.      Defendant City of Westminster is a political subdivision of the State of Colorado.

5.      At all times relevant to this Complaint, Officer Michael Owen was employed by the City of Westminster as a member of the Westminster Police Department. At all times relevant to this Complaint, Defendant Owen was acting under color of state law.

6.      At all times relevant to this Complaint, Officer Tyler Farson was employed by the City of Westminster as a member of the Westminster Police Department. At all times relevant to this Complaint, Defendant Farson was acting under color of state law.

7.      At all times relevant to this Complaint, Defendants City of Westminster and all of its agents and employees were acting within the scope of its/their official duties and employment, under color of state law.

**FACTS**

8.      Clayton Shriver is a 79-year-old retired sub-station electrician who suffers from many serious medical and emotional health conditions, including but not limited to, multiple closed head injuries and traumatic brain injuries, memory loss, organic mood disorder, peripheral neuropathy, bilateral osteoarthritis of the knees, bilateral total knee arthroplasty, left-sided sensorineural hearing loss with

right side restricted hearing, and spinal stenosis of the lumbar spine with neurogenic claudication.

9.     Notwithstanding his medical and physical limitations, Mr. Shriver enjoys the company of his church and is actively involved in the choir.

10.     Mr. Shriver is also a talented framer and woodworker.

11.     On May 15, 2020, Mr. Clayton Shriver, who had no prior criminal history, was accompanying his partner on a shopping trip to Wal-Mart at 7155 Sheridan, Boulevard in Westminster, Colorado.

12.     While Mr. Shriver's partner was purchasing their items from the store, Mr. Shriver, who suffers from the aforementioned pre-existing conditions, began feeling ill and went to sit and wait for his partner inside the McDonald's, which is located on inside the North entrance of the Wal-Mart.

13.     Mr. Shriver mistakenly sat down at a seat in the McDonald's which was designated as a non-seating area due to the COVID-19 Pandemic.

14.     The McDonald's staff working that day told Mr. Shriver that he needed to purchase something or leave the store.

15.     Seventy-eight-year-old Mr. Shriver, who is hard of hearing and suffers from cognitive impairments due to his prior head trauma, was unable to make out what the staff was saying to him.

16.     Perceiving that the McDonald's staff could not understand him, Mr. Shriver began raising his voice to explain that he needed medical help.

17.     Unfortunately, Mr. Shriver was unable to speak clearly at the time due to his condition.

18.     At that time, Defendant Owen, who was already present at the Wal-Mart due an unrelated matter, was called to respond to the McDonald's by Wal-Mart loss prevention.

19.      Defendant Owen then responded to the McDonald's.

20.     As Defendant Owen made his way into the McDonald's he could see Mr. Shriver sitting in a "no sitting" area.

21.     He observed Mr. Shriver speaking loudly but had trouble understanding what Mr. Shriver was saying.

22.     Notwithstanding his apparent trouble speaking clearly, Mr. Shriver was able to provide Defendant Owen with his name. Mr. Shriver also told Defendant Owen that he was suffering from a medical condition and needed to sit down.

23.     Mr. Shriver remained seated while speaking to Defendant Owen.

24.     The McDonald's staff complained to Defendant Owens about Mr. Shriver.

25.     Hearing complaints about him, Mr. Shriver recalls putting his arms up, palms open, in an act indicating submission and telling the staff, "Wait a minute, I'm in terrible pain" and then listing off numerous conditions that he suffers from, including severe arthritis, diabetes, neuropathy, gout, polymyalgia rheumatica, bipolar disorder and three brain injuries.

26.     Mr. Shriver further thought he heard that he was being asked to leave so placed his hands on the seat and began to pull himself up vertical to stand up, telling Defendant Owen, "Okay, I'll go to my car."

4

27.     Having committed no crime whatsoever, Mr. Shriver stood up and attempted to walk out of the McDonald's and away from Defendant Owen.

28.     At that point, a reasonably trained officer would have known that he or she lacked probable cause and reasonable suspicion to arrest Mr. Shriver and Mr. Shriver was, indeed, free to leave.

29.     Instead, when Mr. Shriver attempted to leave the McDonalds, Defendant Owen grabbed Mr. Shriver, and violently threw him to the ground.

30.     As Defendant Owen violently took Mr. Shriver to the ground, Mr. Shriver tensed his body up, trying to protect his head from hitting the ground.

31.     Once Mr. Shriver was on the ground Defendant Owen seized Mr. Shriver by handcuffing him.

32.     Writhing in pain from the throwdown, Mr. Shriver stiffened up and attempted to rollover.

33.     Defendant Owen, who had already taken Mr. Shriver to the ground, nevertheless grabbed his Taser gun and tased Mr. Shriver in the stomach and thigh.

34.     Defendant Owen tased Mr. Shriver despite the fact that he was unarmed, on the ground, and had committed no crimes.

35.     Defendant Owen tased Mr. Shriver despite AXON recommendations that the taser not be used against elderly individuals.

36.     Mr. Shriver, who was 78-years-old at the time, is in the category of individuals that AXON recommends the taser not be deployed against.

37.     The tasing of Mr. Shriver caused him significant pain and suffering.

38.     Once the initial tasing cycle was completed, Mr. Shriver called Defendant Owen a "little shit" and began attempting to pull the painful probes out of his body.

39.     At this point, Defendant Farson arrived on the scene.

40.     Even though Defendant Farson could see that Mr. Shriver was incapacitated on the ground, unarmed and elderly, Defendant Farson failed to assess the situation and immediately began assisting Defendant Owen in falsely arresting Mr. Shriver.

41.     The officers attempted to force Mr. Shriver's arms behind his back in order to formally arrest him, even though the officers lacked a legal basis to do so.

42.     Defendant Owen then tased Mr. Shriver a second time in the lower back and buttocks.

43.     The second tasing caused Mr. Shriver severe pain and bleeding where the taser probes injected into his body.

44.     After the second tasing, Defendants Owen and Farson handcuffed Mr. Shriver.

45.     After cuffing the officers called for medical personnel to assess Mr. Shriver at the scene.

46.     After being assessed by paramedics, Mr. Shriver was transported via ambulance to the hospital for further evaluation.

47.     As a result of the excessive force used by Defendants Owen and Farson against Mr. Shriver, Mr. Shriver sustained the following injuries: severe right knee pain and right elbow pain, right knee abrasion, and right elbow

contusion.

48.     The injuries to Mr. Shriver's right elbow are documented below:



49.     The injuries to Mr. Shriver's lower back and buttocks are documented

as follows:



50.     The injuries to Mr. Shriver's right knee are documented as follows:



51.     As a result of the second tasing, Mr. Shriver's lower back and buttocks were punctured, causing significant bleeding.

52.     Mr. Shriver's underwear and clothing was bloodied as a result of the taser prongs:

 

53.     As a result of the excessive force used by Defendants Owen and Faron against Mr. Shriver, Mr. Shriver continues to have right hip pain and continues to lack full range of motion in his right shoulder.

54.     Mr. Shriver continues to receive follow-up care for the physical injuries he sustained as a result of the excessive force used by the Defendants.

55.     It defies common sense that two healthy officers in good physical condition reasonably took down and twice tased 78-year-old Mr. Shriver, who suffers from significant debilitating and limiting medical impairments.

56.     At no time did Mr. Shriver pose an immediate threat to the safety of the Defendants or anyone else in the McDonald's or Wal-Mart.

57.     Upon information and belief, Defendant Owen lacks training in recognizing mental health crises. Had Defendant Owen been sufficiently trained to recognize mental health issues exhibited by citizens, Defendant Owen would have

recognized that Mr. Shriver was suffering from a probable mental or physical health episode.

58.     Upon responding to the McDonalds and after observing Mr. Shriver, Defendant Owen should have immediately recognized that Mr. Shriver needed medical assistance.  Instead, Defendant Owen treated Mr. Shriver like a violent criminal and falsely arrested him.

59.     Mr. Shriver was criminally charged by Defendant Owen with the following Westminster Municipal Code ordinance violations: Trespass (6-3-5(A)), Obstructing a Police Officer (6-5-5(A)), and Resisting Arrest (6-5-1(A)).

60.     Defendant Owen lists "McDonald's" and "Society/Public" as the victims of Mr. Shriver's alleged crimes.

61.     All of the criminal charges against Mr. Shriver subsequently were dismissed.

### FIRST CLAIM FOR RELIEF
### (42 U.S.C. § 1983 Fourth Amendment Violation – Excessive Force)
### (Plaintiff Shriver Against Defendant Owen – Initial Takedown and Seizure)

62.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if set forth herein.

63.     Defendant Owen, at all relevant times hereto, was acting under the color of state law in his capacity as a police officer with the City of Westminster.

64.     At the time of Mr. Shriver's unlawful seizure, beating, and first and second tasing, Mr. Shriver had a clearly established constitutional right under the Fourth Amendment of the United States Constitution to be secure in his person from unreasonable seizure through excessive force.

65.     Any reasonable law enforcement officer knew or should have known of this clearly established right at the time excessive force was used against Mr. Shriver.

66.     Defendant Owen engaged in the use of force that was objectively unreasonable in light of the facts and circumstances confronting him, violating Mr. Shriver's Fourth Amendment rights. Specifically, Defendant Owen did not have probable cause or reasonable suspicion to detain, stop or seize Mr. Shriver. Yet, Defendant Owen grabbed Mr. Shriver, seizing him, and then physically took him to the ground causing him significant physical injuries, damages and losses.

67.     Defendant Owen's acts of grabbing, taking down to the ground, and seizing Mr. Shriver constitute acts of unreasonably excessive force against Mr. Shriver, proximately causing Mr. Shriver's injuries, damages and losses.

**SECOND CLAIM FOR RELIEF**
**(42 U.S.C. § 1983 Fourth Amendment Violation – Excessive Force)**
**(Plaintiff Shriver Against Defendant Owen – First Tasing)**

68.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if set forth herein.

69.     Defendant Owen, at all relevant times hereto, was acting under the color of state law in his capacity as a police officer with the City of Westminster.

70.     At the time of Mr. Shriver's unlawful seizure, beating, and tasing, Mr. Shriver had a clearly established constitutional right under the Fourth Amendment of the United States Constitution to be secure in his person from unreasonable seizure through excessive force.

71.     Any reasonable law enforcement officer knew or should have known

of this clearly established right at the time excessive force was used against Mr. Shriver.

72.     Defendant Owen engaged in the use of force that was objectively unreasonable in light of the facts and circumstances confronting him, violating Mr. Shriver's Fourth Amendment rights. After violently taking Mr. Shriver to the ground, Defendant Owen unlawfully tased him a first time causing him significant physical injuries, damages and losses.

73.     In tasing Mr. Shriver, Defendant Owen unreasonably used excessive force, against Mr. Shriver, proximately causing Mr. Shriver's injuries, damages and losses.

### THIRD CLAIM FOR RELIEF
### (42 U.S.C. § 1983 Fourth Amendment Violation – Excessive Force)
### (Plaintiff Shriver Against Defendant Owen – Second Tasing)

74.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if set forth herein.

75.     Defendant Owen, at all relevant times hereto, was acting under the color of state law in his capacity as a police officer with the City of Westminster.

76.     At the time of Mr. Shriver's unlawful seizure, beating, and tasing, Mr. Shriver had a clearly established constitutional right under the Fourth Amendment of the United States Constitution to be secure in his person from unreasonable seizure through excessive force.

77.     Any reasonable law enforcement officer knew or should have known of this clearly established right at the time excessive force was used against Mr. Shriver.

78.     Defendant Owen engaged in the use of force that was objectively unreasonable in light of the facts and circumstances confronting him, violating Mr. Shriver's Fourth Amendment rights.

79.     After taking Mr. Shriver to the ground and tasing him one time, Defendant Owen engaged in another act of excessive force by tasing Mr. Shriver for a second time.

80.     In grabbing, seizing and detaining Mr. Shriver, Defendant Owen unreasonably used excessive force, against Mr. Shriver, proximately causing Mr. Shriver's injuries, damages and losses.

**FOURTH & FIFTH CLAIMS FOR RELIEF**
**(42 U.S.C. § 1983 Fourth Amendment Violation – False Arrest / Unlawful Seizure)**
**(Plaintiff Shriver Against Defendants Owen and Farson – Handcuffing and Arrest)**

81.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if set forth herein.

82.     Defendants Owen and Farson, at all relevant times hereto, were acting under the color of state law in their capacities as Westminster police officers.

83.     At the time of Mr. Shriver's false arrest and unlawful seizure, Mr. Shriver had a clearly established constitutional right under the Fourth Amendment of the United States Constitution to be secure in his person from unreasonable seizure and false arrest.

84.     Any reasonable law enforcement officer knew or should have known of this clearly established right at the time the false arrest and unlawful seizure was initiated against Mr. Shriver.

85.     Defendants Owen and Farson engaged in a false arrest and unlawful seizure that was objectively unreasonable in light of the facts and circumstances confronting them, violating Mr. Shriver's Fourth Amendment rights.

86.     In handcuffing and formally arresting Mr. Shriver, Defendants Owen and Farson were the moving force behind and the proximate cause of the serious injuries, damages and losses sustained by Mr. Shriver.

**SIXTH CLAIM FOR RELIEF**
**(42 U.S.C. § 1983 Fourth Amendment Violation – Malicious Prosecution)**
**(Plaintiff Shriver Against Defendant Owen)**

87.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if set forth herein.

88.     Defendant Owen caused Mr. Shriver's confinement and prosecution by falsifying criminal allegations against him so that Mr. Shriver was criminally prosecuted for crimes that he did not commit.

89.     Upon retaining defense counsel, Mr. Shriver's case was dismissed in its entirety.

90.     No probable cause supported the original arrest or prosecution of Mr. Shriver by Defendant Owen.

91.     Defendant Owen acted with malice in falsifying the charges against Mr. Shriver, or recklessly disregarded the possibility that the allegations against Mr. Shriver were indeed false.

92.     Prior to and throughout the malicious prosecution of Mr. Shriver, Mr. Shriver had a clearly established constitutional right under the Fourth Amendment of the United States Constitution to be secure in his person and free from malicious

prosecution.

93.     Any reasonable law enforcement officer knew or should have known of this clearly established right at the time of Mr. Shriver's criminal prosecution.

94.     Defendant Owen's false allegations against Mr. Shriver were the moving force behind and the proximate cause of the unlawful, malicious and vindictive prosecution against Mr. Shriver, causing him serious injuries, damages and losses.

**SEVENTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – 4th Amendment Violation – Excessive Force**
**(Plaintiff Shriver Against Defendant Farson – Failure to Intervene)**

95.     Plaintiff hereby incorporates all other paragraphs of this *Complaint* as if fully set forth herein.

96.     At all relevant times hereto Defendant Farson was acting under the color of state law, and his acts or omissions were conducted within the scope of his official duties or employment.

97.     42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

98.     Mr. Shriver is a citizen of the United States.

99.     Defendant Farson is a person for purposes of 42 U.S.C. § 1983.

100.    Mr. Shriver had a clearly established right to be free from the unlawful, excessive force used against him.

101.    Defendant Owen lacked any reasonable basis to use physical force against Mr. Shriver.

102.    At the time that Defendant Owen engaged in excessive force against Mr. Shriver, Defendant Farson was present and witnessed the situation between Defendant Owen and Mr. Shriver.

103.    Based upon Defendant Farson's own, independent observations of Mr. Shriver's conduct, Defendant Farson knew that Defendant Owen was not justified in using the degree of force against Mr. Shriver that Defendant Owen engaged in.

104.    During each instance of excessive force engaged in by Defendant Owen, Defendant Farson had a duty to intervene on behalf of Mr. Shriver.

105.    Despite being present, on scene and independently observing that no use of force was required under the circumstances, Defendant Farson failed to intervene on behalf of Mr. Shriver.

106.    Defendant Farson knew or should have known of Mr. Shriver's clearly established right to be free from excessive force at the time the unlawful, excessive force was used against him.

107.    Defendant Farson's actions or inactions, as described herein, were undertaken intentionally, maliciously, callously, willfully, wantonly, and/or in reckless disregard of Mr. Shriver's federally protected Fourth Amendment rights.

108.   As a result of the unconstitutional failure to intervene by Defendant Farson, Mr. Shriver has suffered significant injuries, damages and losses.

### EIGHTH CLAIM FOR RELIEF
### U.S.C. § 1983 –Failure to Train and Supervise
### (Plaintiff Shriver Against Defendant City of Westminster)

109.   Plaintiff hereby incorporates all other paragraphs of this *Complaint* as if fully set forth herein.

110.   The City of Westminster has an ongoing duty to train patrolling officers on appropriate use of force and to ensure that all officers understand the constitutional limitations of their actions.

111.   Defendant Owen should have been trained to identify that Mr. Shriver was experiencing mental and physical health problems, not that criminal activity was afoot.

112.   The appropriate, reasonable and lawful response from Defendant Owen would be to assist Mr. Shriver in obtaining medical treatment.

113.   At the time that individual Defendants made contact with Mr. Shriver, it should have been obvious so them that Mr. Shriver was suffering from a medical condition. The City of Westminster has failed to train and equip its employees with the specific skills needed to handle recurring situations, such as the one described above and involving Mr. Shriver, wherein law enforcement encounters law abiding citizens in need of medical attention.

114.   The City's training of its employees is so deficient that its own officers fail to understand these recurring situations and fail to distinguish between when someone is engaged in criminal activity and when someone is in need of medical

care and assistance.

115.   Because Defendant Owen lacks the appropriate training to identify persons in the midst of mental or physical health episodes, Defendant Owen treated Mr. Shriver like a criminal suspect, rather than an innocent, disabled and elderly man who needed help.

116.   Additionally, Defendant Owen lacks the necessary training to recognize and appreciate when it is appropriate to use physical force in apprehending a criminal suspect.

117.   Given the circumstances presented to Defendant Owen throughout his interactions with Mr. Shriver, a reasonably trained officer would have known that it was not appropriate to use physical force to detain, seize and arrest Mr. Shriver under the circumstances.

118.   In treating Mr. Shriver like a criminal suspect, rather than an elderly gentleman in need of help, Defendant Owen caused Mr. Shriver to suffer injuries.

119.   The City of Westminster is liable to Mr. Shriver for intentionally, recklessly or with deliberate indifference failing to properly train and supervise Defendants Owen and Farson as follows:

    a.  Due to the inadequate training by the City of Westminster, Defendant Owen utilized excessive force that caused serious bodily injury to Mr. Shriver under circumstances that did not warrant any use of force;

    b.  Due to the inadequate training by the City of Westminster, Defendants Owen and Farson falsely arrested an innocent, elderly man who was in the midst of a medical crisis;

c.  Due to the inadequate training by the City of Westminster, neither Defendant Owen nor Defendant Farson were able to identify that Mr. Shriver was having a mental health episode and/or medical crisis and needed assistance from trained personal rather than to be violently arrested, repeatedly tased and handcuffed prior to medical attention being rendered on Mr. Shriver's behalf;

d.  Due to the inadequate training by the City of Westminster, Defendant Owen failed to reasonably assess a need for the use force under the circumstances;

e.  Due to the inadequate training by the City of Westminster, Defendant Owen engaged in excessive force against Mr. Shriver as a form of punishment and retribution against Mr. Shriver;

f.  Due to the inadequate training by the City of Westminster, neither Defendant Owen nor Defendant Farson were trained in the five-second rule of cuffing under neuromuscular incapacitation in order to be able to arrest and handcuff Mr. Shriver during the initial tasing event and avoid a subsequent tasing to Mr. Shriver, an elderly gentleman;

g.  Due to the inadequate training by the City of Westminster, neither Defendant Owen nor Defendant Farson were trained in AXON's Taser Training, which clearly states that tasers are not to be used on elderly individuals. Alternatively, the City of Westminster's tasing practice completely disregards AXON tasing training materials,

which prohibits the use of tasers on elderly individuals, and against AXON's recommendations, the City of Westminster permits its employees to use tasers against law abiding citizens notwithstanding AXON's prohibition against the same.

120.    Defendant Owen's attack on Mr. Shriver, and his resulting injuries, are a direct consequence of the City of Westminster's failure to properly train and supervise Defendants Owen and Farson, and/or its unconstitutional policies.

121.    The lack of training of Defendant Owen is evidenced by the violent response he had while on duty and engaging with unarmed Mr. Shriver, who at the time of their interaction was in the midst of a medical and/or mental health episode wherein he needed help from trained medical professionals.

122.    The lack training of Defendants Owen and Farson caused Mr. Shriver's injuries, damages and losses.

123.    The actions or omissions as described herein deprived Mr. Shriver of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against each of the Defendants, and award him all relief allowed by law, including but not limited to the following:

(a) Appropriate relief at law and equity;

(b) Declaratory relief and other appropriate equitable relief;

(c) Economic losses on all claims as allowed by law;

(d) Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, loss of companionship and association with family members, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(e) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(f)  Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

(g) Pre-and-post judgment interest at the appropriate lawful rate;

(h) Any further relief that this court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this14th day of January, 2022.


Respectfully Submitted,


 /s/ Tiffany J. Drahota
tiffany@drahotadefense.com
Drahota Defense LLC
1543 Champa Street Ste 400
Denver, CO 80202
(402) 651-0383

**SAGAL LAW, LLC**
s/ Roger Sagal
roger@sagalgroup.com
Sagal Law, LLC
241 S. Elizabeth Street
Ridgway, CO 81432

(970) 596-4258